committed today on oral argument, and we begin with Santos v. White. Ms. Grodner. At the podium, yes. Uh-huh. Please. Good morning, Your Honors. Donna Grodner on behalf of Mr. Garvin Castro Santos. Your Honors, if we start with the, uh, the original cases where this, uh, doctrine developed, we had false arrests and malicious prosecution cases where the Supreme Court came in and heck and said, we have to have a favorable determination in those cases before they may proceed. We then moved forward into some Fourth Amendment cases, illegal search and seizure, and we also had excessive force cases. Well, we had our First Amendment cases also, but we had our Fourth Amendment cases that moved forward, and we had some excessive force cases. And in the excessive force arena under the Fourth Amendment, the courts, this Court and the Supreme Court, have said there must be favorable, uh, exhaustion if there's a charge for resisting arrest. So the courts looked at those cases and said, if you're claiming that you were roughed up during an arrest, then you must have, and there were charges of resisting arrest, then you must show favorable, uh, termination of those charges to proceed on the resisting arrest charges. Then that evolved in the De Leon line of cases, I think, that came out of the Fifth Circuit where they said, well, did the conduct occur before the arrest? Did the conduct that's complained of occur during the arrest, during the period of time when there was a, the charge for resisting arrest, or did it occur afterwards? So that was in cases where there was criminal prosecutions with Sixth Amendment protections. So we have the First Amendment cases that came forward out of the prisons where they said, I'm being retaliated against in violation of my First Amendment rights because I filed a grievance. And in those cases, the courts said, and this Court has said, no, there's no, uh, favorable termination requirement. We had a case come forward, uh, that went all the way to the Supreme Court, the Edwards v. Balasagh call, and I know everybody pronounces that different, I'm just going to say Balasagh, Balasagh, how about that, Balasagh. And, uh, in, in that case, there was actually a challenge to the due process proceedings and to the prosecutions where a favorable ruling in that court would have restored good time credits. So in that line of cases, Balasagh line of cases, they said, we're dealing with cases where there's an effect on, uh, the time that, that you must serve, whether you're getting good time credits resolved. They're saying that's a habeas corpus rather than a 1983 case. So you've got to have favorable termination to proceed on a case like that. So we had the, uh, Clark v. Stalder case, similar case, uh, out, out of the Eastern District here where, uh, the challenge to the constitutionality of some disciplinary proceedings would have restored 30 days good time credit. So then we had the Muhammad case and, uh, that case was a case where the defendants wanted to argue, well, we need to overlay all this on top of all the, the prison disciplinary proceedings. They wanted to extrapolate from the cases that involved criminal convictions and loss of time and sentences to these, uh, these Gordon Variety 1983 cases where they were just claiming damages, no challenge to the defense. And in Muhammad, the court said, we, we're not going to allow, uh, you to overlay those onto your Gordon Variety 1983 cases. They're only going to apply to, uh, cases that involve criminal convictions. So we move forward in time and, and, and I literally thought all this was, was settled, um, and we now have, once again, out of the Middle District, a, a court applying these, uh, proceedings to criminal disciplinary proceedings as though they're convictions and, and really calling criminal disciplinary proceedings convictions as though they're Sixth Amendment criminal convictions. And, and all we're here for today, Your Honors, and, and, and I know Judge Willett, you and Judge Smith did, uh, the Bourne case and in that section where you, where you wrote about the application of heck, in that section, it's straight up what we're arguing here today. It, it follows Muhammad exactly. Now, I know in the Qualified Immunity section of that opinion, there's some other things about when did this occur and when did that occur in applying a sort of resisting arrest Fourth Amendment analysis to the Qualified Immunity. But if we just look at the section that Your Honors wrote on Bourne, that, that's all we're asking for is that that be applied to these cases as the general rule which it was meant to be. So, thank you, Your Honors, for your time. Unless you have any questions, I would like to reserve the remainder of my time. You have saved time for rebuttal. So, if we were to apply the facts of, and of course, we're only addressing the, uh, uh, the Santos case right now, so, uh, as to the facts of Santos, if, if we were to apply Bourne in the way that you think we should, tell us, tell us what, what we would do with, with Bourne as it, as it applies to, to this case and what, what relief would we either grant or order the district court to grant? Yes, sir. Um, Your Honor, it's, it's interesting in this case, Santos, because it, in this case, after this beating took place at the Lane Hunt Correctional Center, these officers actually charged Mr. Santos with five counts of battery on a police officer. So, they were sixth amendment criminal charges instituted against him and we stayed the proceedings. District Attorney's Office dismissed the charges. So, we went forward. Then, we're here claiming that, well, the prison, the prison pop, the, the prison disciplinary people and the correctional officers graded their own papers and found that he violated these, these disciplinary rules. So, you're barred from going forward. So, it's, it's really an, an, an interesting thing that the sixth amendment cases that would have actually barred him, those were dismissed. So, I'm just asking for you to reverse, Your Honor, and just basically cut and paste, uh, from Bourne. I, I just ask that, that Your Honors just simply cut and paste, uh, section, section three or four, Your Honors, where you explicitly, uh, address the, uh, right in front of me. Sorry, Your Honor. Okay, I'm sorry. Well, that's all right. We'll, we'll, we'll take a look at it. I just wanted you to be as specific as you could about how it applies to this specific case. Section three specifically addresses the heck analysis in Bourne. Section four addresses the qualified immunity. So, I'm just asking for a cut and paste from section three. Thank you very much, Your Honors. Yes, you've saved time for rebuttal, Ms. Brunner. Thank you. Mr. Castaigne? Excuse me here. Good morning, Your Honors. May it please the Court. My name is Andre Charles Castaigne. I'm an assistant attorney with the State of Louisiana. I'm here representing Major Craig White, Captain John Wells, Colonel Alan Verrett, and Lieutenant Ashley Martell here, I think, obviously, to ask you to affirm. Uh, I would agree with Ms. Grodner that this matter's been settled. I think in Oquan, this Court was very clear that prison, I mean, and applying Clark and particularly Edwards v. Balasag, that prison disciplinary matters in which the inmate lost good time qualify for the heck bar. And whether you want to call it heck or heck through Edwards. And I think that's pretty much the response. The cases Ms. Grodner cited are, I think, inapplicable because most of those, you know, Muhammad, the First Amendment case she cited, the inmate didn't lose good time in the first place. Uh, the, you know, it is just a natural consequence, not even consequence, this Court pretty clearly said in Oquan that as a result of Edwards v. Balasag that prison disciplinary proceeding convictions, and I understand that the word conviction can, kind of has a double use here, prison disciplinary proceedings in which the inmate is found liable and responsible, and when the inmate loses good time, that those are, those qualify for the application of the heck bar. And I think in this case, under the facts of this case, heck applies because there was one continuous course of events from start to finish. It began when Mr. Santos, as is said in the disciplinary report in which he lost good time, that he was convicted at the prison disciplinary proceeding on. He wouldn't get, wouldn't allow them to restrain him, he was in a wrong area, that he fought with them then. It was a pretty serious fight. He punched on several officers. He broke one officer's dentures. He continued to fight and struggle as they brought him to the Ad Seg unit. You know, it was, disobeyed their orders to come to the cell bars and the shower cell to be restrained and not to be unrestrained. And from start to finish it was one incident. There was a, pretty much hands on, there wasn't that kind of break that was present, say in Bourne. There wasn't that kind of, excuse me, there wasn't that kind of break that was present in Oakland. Where the court said, if I recall, there was force in the cell, but then the inmate allowed himself to be restrained and did not fight back anymore. The inmate complied. And the second incident in Oakland involved use of force after the inmate complied. And that's very different from this case where the inmate struggled throughout. And I think the footnote in Oakland even said that if you had a situation where the inmate struggled with the officers throughout the situation, it would be a very different case. And I would submit this is that very different case. And Ms. Gardner urges us to apply Bourne. What do you do with Bourne? I say Bourne supports our position because, both Bourne and Oakland, say the, a prison loses good time, heck applies. In Bourne, there was a conceptual break. I think Bourne makes it clear in the opinion that the later uses of force occurred after the inmate had complied and surrendered. That there was not the situation where the inmate was still struggling with the officers, not complying with the orders. And again, that same break is there in Oakland. I think we also cite Bush v. Strain, a false, a Fourth Amendment arrest case where there's, even the officer said that the, Ms. Bush had hit the car during a struggle before she was restrained, whereas they were dealing with the situation where supposedly it happened while she was not fighting anymore. What about the alleged excessive force by Captain Wells after the inmate had complied, was no longer resisting, the struggle was over? I think if you get, obviously I think the further you get away in time from the original incident, you know, it does become more attenuated. I think once you, you know, certainly the allegations are that, or at least the reports support that he was still, you know, resisting the, disobeying orders. I mean, obviously I think in the shower cell is different than the hands-on force up until that point, but that he was still disobeying the orders, would not come to the cell bars to have their handcuffs taken off of him. Now he did, after they used the pepper spray, he was restrained, he quit disobeying, he quit struggling. You know, so that is when I would say the overall incident stopped at that point. I think that's consistent with the case law that says once the inmate complies with the orders and ceases struggling, that is when it ends. So accepting all of that as you've just presented it, then what kind of relief would we announce under these, under these facts? Affirmed. We affirm the district court, we dismiss it, we dismiss the lawsuit pending that he satisfies, or subject to when he satisfies the HEC requirement. I can't remember the exact wording, but the court's case law has the preferred order at the end of a HEC, a bar to HEC dismiss matter. I think with regard to the, just to summarize, unless the court has any questions, I mean to summarize, I agree with Ms. Grodner that the matter of whether prison disciplinary reports are subject to the HEC and Edwards bar is in fact settled. It's very clear and the court very clearly said that his allegation that he did nothing wrong is a direct challenge. Even, and even if he doesn't specifically ask for the good time to be restored, it's the relief sought, the effect of the, it's not the relief sought, it's the effect of what he's asking for, not the specific relief. So the fact that he doesn't specifically ask for the restoration of good time is not the right question. Are the facts which were relied upon with respect to the disciplinary proceedings well known enough on this record to be able to say that, you know, HEC, I mean, that they're so inextricably tied to HEC such that it's barred, or said differently is, you know, sort of the fact intensive nature of what conduct really, you know, was part of the disciplinary proceeding, that it can't be said that they're inextricably tied together. I mean, obviously they're close, etc., etc., but, you know, in some intuitive sense it seems to me that it should sort of be beyond perventure that they are inextricably tied if HEC is going to just, you know, like bar it, but I don't know, and maybe it is, maybe it is, you know, if just the facts that were drilled down and were relied upon in the disciplinary proceedings are so easily discernible, etc., that we can say, well, you know, they're just inextricably tied, therefore HEC applies. Do you follow what I'm saying? I think, I hope so. I think when we're dealing with a HEC issue, whether in a criminal conviction or a prison disciplinary board matter, it's the face of what the inmate was convicted of. In fact, HEC is what prohibits us from getting underneath and essentially retrying the prison disciplinary board proceeding. The inmate was found responsible in the disciplinary board. Just knowing that aggravated disobedience, you know, that that was colluded, that's sufficient. You don't need to know any more than the adjudication. If the adjudication was aggravated disobedience or whatever the term was, if that's sort of facially there, then ipso facto, HEC barred, is that what you're saying? Yeah, I think the fact that there was a charge on which he was found liable, the factual basis for that charge, and the taking away good time are the essential portions of that report. Because otherwise we're getting into did it happen or not, which is retrying the prison disciplinary report that he can't do until he, actually wouldn't even have to retry the prison disciplinary report. If he satisfies the HEC bar, the conviction is gone. Okay. If the court has any questions, I would ask you to please affirm the district court, and I appreciate the opportunity to be here in these interesting times. Thank you, Mr. Castaigne. Ms. Grodner, you saved some time for rebuttal. Your Honor, I would first like to point to footnote one of the Muhammad v. Close case because it appears that the court is looking at, given a Fourth Amendment analysis possibly to disciplinary proceedings which do not have Sixth Amendment protections. And in footnote one, quote, the assumption is that the incarceration that matters under HEC is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules. So footnote one of the Muhammad case, I believe, specifically addresses whether this applies to disciplinary infractions of prison rules. I'd like to then circle over to . . . It would apply, wouldn't it, if there were a loss of good time credit such that the inmate served a longer period of time? According to the Supreme Court case and to this court's Section 4 of Born, it only applies if there is a challenge to the loss of good time credits or there's a possible return of good time credits from a jury verdict. I just had another case, the Gilbert O'Neill case, that we went all the way through verdict and had a favorable jury verdict. They then challenged that on appeal saying, well, the court should have had jurisdiction because he had a disciplinary write-up. And this court said, you know, followed the premise, and I'll quote from what Judge Stewart wrote on the IFP on this case, quote, when a prisoner seeks relief under 1983, a, quote, court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. If it does, then, quote, the litigant must first achieve favorable termination of his available state or federal habeas opportunities to challenge the underlying conviction or sentence, quote Muhammad. Although heck applies to prison disciplinary convictions, it does not apply if the claims do not implicate the validity of the prisoner's underlying criminal conviction or affect the duration of his sentence, quote Muhammad, quote Wilkinson. So it appears that there was another, another quote that I'd like to bring to the court's forefront, or another point I'd like to bring to the court's forefront. A prisoner who challenges the very fact or duration of his physical confinement and who seeks judgment that would entitle him to release must pursue habeas corpus relief rather than civil rights relief under 1983. So the 1983 cases are for damages that do not involve a challenge to convictions, the terms of convictions, the length of sentences where habeas corpus would apply. It's, it's one or the other. And that is from that, that is from the Prysor versus Roderig and from Clark versus Stalter also discusses that at, so it's, it's one remedy or the other. And these are garden variety 1983 damage cases from excessive force. Now a quote from Heck, which the defendants have front and center in their brief at page 13 of their brief, specifically shows that this entire line of applying, acting as a disciplinary proceedings in a prison setting have Sixth Amendment protections is not what the Supreme Court or what this court has considered in its past precedents. In the Bourne case, for example, the defendants just told Your Honor, well, under Bourne you've got to look at the specific facts of the case. And if you look at Bourne, section four of that case is the section which discusses the 1983 claims and the application of Heck. Section five, which they are reaching to, which says, look at these individual facts, the court is not discussing the Heck claim there. The court is discussing the qualified immunity analysis. So they're, you know, ignoring the part where the court has its holding on Heck and its reasoning on Heck, which is almost exactly what Judge Stewart wrote in this case already, and saying, oh, we're going to apply this qualified immunity analysis the court did in section five, which is actually a Fourth Amendment analysis applied where there are arrests and formal court proceedings. Thank you, Your Honor.